**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nirmala Arimilli,<br><br>    Plaintiff,<br><br>v.<br><br>Keith Rezendes,<br><br>    Defendant. | No. CV-21-00345-PHX-GMS<br><br>**ORDER** |

Before the Court is Keith Rezendes's ("Defendant") Motion to Dismiss (Doc. 16). For the following reasons, Defendant's motion is granted in part and denied in part.

## BACKGROUND

The following facts from the Third Amended Complaint ("TAC") (Doc. 15) are construed in a light most favorable to Plaintiff. Plaintiff Nirmala Arimilli ("Plaintiff") formed a relationship with Defendant between 1999 and 2000. (Doc. 15 at 2.) In March 2017, Plaintiff visited Defendant, and was introduced to his purported wife, Ms. Rosen. *Id.* at 3. During this visit, Defendant asked Plaintiff to invest in his company, Avidbrain Inc., claiming that she was eligible to invest in his company due to a change in the investment laws. *Id.* Defendant also extended a job offer to Plaintiff, which she accepted. *Id.* By April 2017, Plaintiff had invested $125,000 in Defendant's company.

While employed by Defendant, Plaintiff noticed "discrepancies in relation to [the] overall success of the company." *Id.* Defendant denied any wrongdoing. *Id.* Plaintiff

alleges that, due to her "years long trust in Defendant," she believed Defendant and maintained communication with Defendant. *Id.* at 4. After receiving further information that "affirmed [her] doubts and concerns about the company," Plaintiff confronted Defendant and was subjected to a "torrent of vitriol and verbal abuse." *Id.* at 4. Plaintiff's last communication with Defendant was in November 2017. *Id.* at 5.

Plaintiff filed suit in Maricopa County Superior Court on October 26, 2020. Plaintiff amended her complaint twice in state court. The Second Amended Complaint asserts the following claims against Defendant: fraudulent misrepresentation; negligent misrepresentation; professional negligence; gross negligence; fraudulent inducement; fraudulent concealment; breach of fiduciary duty; conversion, misappropriation; constructive fraud; security and stock fraud; breach of oral agreement; breach of written contract; identity theft; wage theft; unjust enrichment; intentional infliction of emotional distress ("IIED"); defamation; breach of the implied covenant of good faith and fair dealing; civil racketeering; and emergency protective order. (Doc. 1-1 at 130-133.)

Defendant removed the case to this Court on February 26, 2021. Defendant subsequently moved to dismiss the complaint pursuant to Federal Rule of Procedure Rule 12(b)(6). (Doc. 5 at 1.) The Court granted in part and denied in part Defendant's motion. (Doc. 14 at 10.) First, Plaintiff's claims for negligent misrepresentation, breach of fiduciary duty, professional negligence, gross negligence, conversion, misappropriation, constructive fraud, security and stock fraud, identity theft, wage theft, IIED, implied covenant of good faith and fair dealing, and an emergency protective order were dismissed with leave to amend. (Doc. 14 at 10.) Second, Defendant's motion was denied as to Plaintiff's claims for defamation, unjust enrichment, and civil racketeering. (Doc. 14 at 10.) Finally, the Court denied Defendant's motion as to Plaintiff's claims for fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment "to the extent they are based on Defendant's representation about company filings," but otherwise dismissed those claims. (Doc. 14 at 10.) Plaintiff subsequently filed a TAC. (Doc. 15 at 1.) Defendant now moves to dismiss the TAC for failure to state a claim. (Doc. 16 at 2.)

# DISCUSSION

## I. Legal Standard

### A. Notice Pleading Requirements

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), so that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Twombly*, a plaintiff's factual allegations in the complaint "must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). Factual allegations in the complaint are accepted as true, and the pleading is construed "in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint ... may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). Further, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

Allegations in a pro se complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints must be liberally construed and afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### B. Fraud Pleading Requirements

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity of circumstances, statements of the time, place, and nature of the alleged fraudulent activities are sufficient, while mere conclusory allegations of fraud are not." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1028 (D. Ariz. 2003). In addition to setting out the "who, what, when, where, and how" of the misconduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), a plaintiff must "set forth what is false or misleading" about a particular statement, "and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020)).

## II. Analysis

### A. Previously Dismissed Claims

Plaintiff's TAC reasserts several claims previously dismissed by the Court. Defendant moves to dismiss these claims, arguing that Plaintiff has failed to cure the deficiencies that led to the Court's dismissal of these claims in its earlier order. (Doc. 16 at 3.)

#### 1. Gross Negligence

The Court previously dismissed Plaintiff's claim for gross negligence because Plaintiff did "not allege that Defendant knew or had reason to know that his conduct would create an unreasonable risk of bodily harm." (Doc. 14 at 8); *see Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (Ct. App. 1991). Count 2 of the TAC, alleging gross negligence, is identical to the dismissed claim for gross negligence in the SAC. (Doc. 15 at 8.) Plaintiff argues the allegations are sufficient because "gross negligence is not limited to unreasonable risk of bodily harm but also includes unreasonable risk of financial harm," but cites no authority in support. (Doc. 17 at 2–3.)

Plaintiff also argues that the Court should consider the emotional harm she suffered in determining whether Defendant knew or had reason to know his conduct would create an unreasonable risk of bodily harm. *Id.*

Neither argument has merit. First, the Court is unaware of any cases supporting Plaintiff's proposition that gross negligence under Arizona law encompasses financial harm as well as bodily harm. *See, e.g.*, *Noriega v. Town of Miami*, 243 Ariz. 320, 328, 407 P.3d 92, 100 (Ct. App. 2017) (reaffirming the definition of gross negligence set forth in *Walls*). Second, to the extent Plaintiff argues her emotional distress should be considered bodily harm for the purposes of a gross negligence claim, her argument is not well taken. Even though emotional distress may cause bodily harm, emotional distress itself is not a form of bodily harm under Arizona law. *See Keck v. Jackson*, 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979) (requiring, in the NIED context, that "the shock or mental anguish . . . must be manifested as a physical injury" for there to be recovery, because "[d]amages for emotional disturbance alone are too speculative"). Plaintiff's claim for gross negligence is dismissed.

**2.  Security and Stock Fraud, Misappropriation, Identity Theft, and Wage Theft**

Plaintiff's claims for security and stock fraud, misappropriation, identity theft, and wage theft were previously dismissed because Plaintiff did not indicate the legal basis for bringing the claims. (Doc. 14 at 5.) In the TAC, Plaintiff does not identify a statutory or common law basis for any of these claims, nor does she cite any cases in her response that would aid the Court and the parties in identifying the legal basis for her claims. Consequently, Plaintiff has not put Defendant on "fair notice of the claim asserted and the ground upon which it rests" for any of these claims. *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1125 (N.D. Cal. 2009). These claims are therefore dismissed.

**3.  Breach of Fiduciary Duty**

Plaintiff's claim for breach of fiduciary duty was dismissed because she did "not affirmatively allege a fiduciary duty." (Doc. 14 at 6.) The claim alleged in the TAC is

practically identical to the claim dismissed in the Court's prior order. (*Compare* Doc. 1-1 at 117 *with* Doc. 15 at 13.) As before, Plaintiff has failed to allege the existence of a relationship between herself and Defendant that would have imposed a fiduciary duty on Defendant. This claim is likewise dismissed.

### 4. Conversion

The Court dismissed Plaintiff's claim for conversion because she did "not clearly identify the chattel that she bases her conversion claim on." (Doc. 14 at 6.) In the TAC, Plaintiff specifies that the "conversions include but are not limited to; payments to employees, payments on luxury goods and services, repayment of personal debts, and vacations." Under Arizona law, money may be the subject of an action for conversion only if it "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91, 510 P.2d 400, 402 (1973); *see also Case Corp. v. Gehrke*, 208 Ariz. 140, 145–46, 91 P.3d 362, 367–68 (Ct. App. 2004) (allowing claim for conversion of funds to lie when plaintiff possessed a security interest in the funds in question, allowing for identification of funds even when commingled with other funds). Because Plaintiff has not alleged the existence of a security interest or other means of describing, identifying, or segregating the monies allegedly transmitted to Defendant, she has not met her burden to show that hers is not "a debt that could be paid by money generally." *Case Corp.*, 208 Ariz. at 145, 91 P.3d at 367. Plaintiff's claim for conversion is dismissed.

### 5. Constructive Fraud

Plaintiff's claim for constructive fraud was dismissed because it was "only based on misrepresentations that are not sufficiently particular." (Doc. 14 at 7.) Plaintiff's TAC adds allegations that Defendant misrepresented his marital status, and that he "made numerous false representations regarding his company's success and the truthfulness of its filings," for "the purpose of inducing the Plaintiff to rely on [his] representation." (Doc 15 at 17.) However, as before, these allegations are insufficiently definite to satisfy Rule 9. They do not identify particular statements that were false or misleading, nor do they

identify the reason any such statements were false or misleading. Plaintiff's claim for constructive fraud is dismissed.

### 6. IIED

In Arizona, plaintiffs must sufficiently allege three elements to plead Intentional Infliction of Emotional Distress ("IIED") claim: "*first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third*, severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (Ariz. 1987). Conduct is extreme and outrageous under Arizona law when it goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . in which . . . an average member of the community would . . . exclaim, 'Outrageous!'" *Id.* at 43, 734 P.2d at 585 (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). The "conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). It is the duty of the Court to determine whether "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. h). "[A]s the terms 'outrageous conduct' and 'severe emotional distress' are not readily capable of precise legal definition, a case-by-case analysis is required." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986). Courts should not dismiss IIED claims "if reasonable minds could differ about whether the conduct is sufficiently outrageous." *Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (Ct. App. 1999).

The new allegations in the TAC sufficiently state a claim for IIED. Plaintiff now alleges that Defendant engaged in emotionally manipulative tactics in the workplace to keep Plaintiff from questioning him. (Doc. 15 at 25.) Defendant also allegedly monitored Plaintiff's private communications and interactions with others, attempted to incriminate

Plaintiff for his actions, "caused her lack of housing and employment, isolated her from friends and family, and subjected her to long term emotional and psychological abuse." *Id.* Finally, Defendant allegedly interfered with Plaintiff's "ability to refill a prescription." *Id.* The end goal, according to the TAC, was for Defendant to conceal his fraud by making Plaintiff appear unbelievable. *Id.* Taken as true, Plaintiff was subjected to an array of abusive behavior in an attempt to prevent her from blowing the whistle on Defendant's alleged fraud. Moreover, Defendant's behavior, if true, cannot be ascribed to any legitimate business purpose. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995) (noting that a "relevant factor" in determining whether conduct is extreme and outrageous is whether the defendant had a "legitimate business purpose" in acting as it did). As reasonable minds could differ about whether Defendant's conduct was extreme or outrageous, the TAC adequately alleges the first element of IIED.[1]

The second and third elements are likewise satisfied. It can be inferred from the complaint that Defendant intended to cause emotional distress when he attempted to (1) incriminate Plaintiff, (2) cause her to lose her home, (3) isolate her from friends and family, and (4) interfere with her ability to refill prescriptions. And the TAC adequately alleges that Plaintiff suffered emotional distress as a result of the Defendant's actions. Plaintiff's IIED claim remains.

### 7. Breach of Implied Covenant of Good Faith and Fair Dealing

In its prior Order, the Court dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as time-barred. (Doc. 14 at 4.) The TAC does not contain any new allegations that alter the Court's prior analysis. This claim remains time-barred and is dismissed with prejudice.

---

[1] The Court held in its prior order that Plaintiff's claim for IIED was time-barred to the extent it "is based on her interactions with Defendant" because Plaintiff did not provide any basis for inferring she could not have known the basis for her IIED claim in 2017. The TAC does not state when she claims to have become aware that Defendant was responsible for her loss of housing and missed prescriptions. As alleged, the Court cannot determine at the 12(b)(6) stage when Plaintiff's claim for IIED on these new facts accrued. Therefore, the Court declines to dismiss Plaintiff's amended IIED claim on timeliness grounds at this time.

### 8.      Emergency Protective Order

The Court previously dismissed Plaintiff's claim for emergency protective order because the appropriate avenue for seeking such relief is by motion, not through a cause of action in a complaint. In her response, Plaintiff acknowledges that "this needs to be sought through a motion." (Doc. 17 at 8.) Therefore, Plaintiff's claim for emergency protective order is also dismissed. Because Plaintiff cannot plead any set of facts which would state a legally sufficient claim for emergency protective order, this claim is dismissed with prejudice.

### B.      Previously Limited Fraud Claims

The Court preserved Plaintiff's claims for fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment, but only to the extent these claims were based on Defendant's representation that "all company filings were accurate." (Doc. 14 at 7.) As with Plaintiff's claim for constructive fraud, these fraud claims are governed by Federal Rule of Civil Procedure 9's heightened pleading standard. Fed. R. Civ. P. 9(b). To prevail on a common law fraud claim, Plaintiff must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ct. App. 1978).

In the TAC, Plaintiff reiterates her fraud claims on all prior bases, both dismissed and retained, and also alleges an additional basis for fraud: That Defendant held himself out as married to a woman identified in the TAC as "Ms. Rosen," and that Ms. Rosen was involved in making various misrepresentations about Defendant's ventures to Plaintiff. (Doc. 15 at 3, 4, 9.) However, Plaintiff does not identify with sufficient particularity the specific misrepresentations made by Defendant about his marriage, when they occurred, why they were misleading, and why they were false. Moreover, even if Plaintiff has satisfied Rule 9(b)'s heightened pleading standard, the TAC fails to establish that these

misrepresentations were material, that they induced Plaintiff to invest, or that she had a right to rely on these misrepresentations in making her investments. *See Peery*, 120 Ariz. at 269, 585 P.2d at 577. Therefore, Plaintiff's amended fraud claims must be dismissed in part. Plaintiff's claims for fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment remain, but only to the extent allowed by the Court's prior order. (Doc. 14 at 7.)

### C. Previously Retained Claims

#### 1. Unjust Enrichment

The Court previously denied Defendant's motion to dismiss Plaintiff's claim for unjust enrichment pursuant to the economic loss doctrine. (Doc. 14 at 8.) Defendant now moves to dismiss the same claim on the merits, arguing Plaintiff has failed to allege the elements of the claim with the requisite specificity. (Doc. 16 at 14.) "An unjust enrichment claim requires proof of five elements: '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, 283 P.3d 45, 49 (Ct. App. 2012) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 251, 245 P.3d 927, 936 (Ct. App. 2011)). Plaintiff argues that Defendant unjustly enriched himself when Plaintiff invested in his company because of "false and misleading statements regarding his marital status and company performance along with failing to file truthfully with" the Arizona Corporation Commission. (Doc. 15 at 24.) Plaintiff alleges that she invested $125,000 in the company based on these representations. (Doc. 15 at 3.)

The TAC contains sufficient allegations to state a claim for unjust enrichment. By investing $125,000, Plaintiff impoverished herself by that amount. Moreover, the TAC plausibly alleges that Defendant—not his company—received this money, and used it for his personal gain and enrichment. (Doc. 15 at 3.) As Plaintiff impoverished herself by $125,000 to invest in a company—not to enrich Defendant personally—the TAC alleges a lack of justification for the enrichment and impoverishment. Finally Plaintiff may lack an

adequate remedy at law. "[A] plaintiff may plead an unjust enrichment claim in the alternative" when other potential grounds for recovery are disputed. *SiteLock LLC v. GoDaddy.com LLC*, --- F. Supp. 3d. ----, 2022 WL 613226, at *16 (D. Ariz. Mar. 2, 2022). As Defendant has not conceded the validity of any contract governing his relationship with Plaintiff, and disputes other potential bases for liability, Plaintiff's unjust enrichment claim survives because Plaintiff may not have an adequate remedy at law. *Cf. id.* at *17 (dismissing unjust enrichment claim at summary judgment when the defendant conceded that its relationship with the plaintiff was governed by a valid contract).

### 2.   Defamation

As relevant to the defamation claim, the TAC alleges:

> Defendant made false slanderous statements to staff, associates, contractors, and investors. These statements include, but are not limited to Plaintiff's employment status with the company, Plaintiff's ability to perform required job functions, Plaintiff's investment status, and aspects of personal life. [Defendant] stated to employees she acted arbitrarily in decisions under no guidance from [Defendant].

(Doc. 15 at 27.)   Defendant argues these allegations are too broad to effectively state a claim, as Plaintiff is required to allege with specificity the "substance of the defamatory statement." (Doc. 16 at 17.)

"A defamation action compensates damage to reputation or good name caused by the publication of false information." *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). To state a claim for defamation under Arizona law, a plaintiff must show that the defendant (1) made a false statement, (2) published it to a third party, and (3) either knew the statement was false, or acted negligently or recklessly in disregard of the truth. *Peagler v. Phx. Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1061 (D. Ariz. 2012).

Under the Federal Rules of Civil Procedure, a "plaintiff cannot plead a defamation claim by simply alleging that defamatory or libelous statements were made." *Stoyanof v. Crocodiles Not Waterlilies, L.L.C.*, Civ. No. 11-00384 HWG, 2011 WL 13232088, at *5 (D. Ariz. June 23, 2011). While defamatory statements need not be set forth verbatim in

the complaint, they must be "'specifically identified,' such that the 'defendant may adequately defend itself.'" *Ultimate Creations, Inc. v. McMahon*, No. CV-06-0535-PHX-ROS, 2007 WL 9735048, at *2 (D. Ariz. Feb. 5, 2007) (quoting *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997)). *Flowers v. Carville* held that a complaint adequately stated a claim for defamation when it listed "the precise statements alleged to be false and defamatory, who made them and when," even though it only alleged "the required state of mind generally." 310 F.3d 1118, 1131 (9th Cir. 2002). By contrast, the *Stoyanof* court found insufficient an allegation that the defendant made "false, derogatory, or maliciously critical" statements "concerning, but not limited to, [the plaintiffs'] responsibility for the lease of Defendants' former facility, the use of money invested by others in [the plaintiffs' business venture], and allegations of securities fraud," and did not allege "when or how these alleged defamatory statements were made." *Stoyanof*, 2011 WL 13232088, at *5.

Like in *Stoyanoff*, the TAC in this case makes "generalized allegations regarding [Defendant]'s alleged defamatory statements." *Id.* It does not "specify when or how these alleged defamatory statements were made," and lacks specifics as to the content of the statements at issue. *Id.* Therefore, Plaintiff's defamation claim is insufficiently specific, and is dismissed pursuant to Rule 12(b)(6). Because Plaintiff represents in her Response that she possesses greater detail about this claim that she is willing to adduce at a later stage in the proceedings, she is permitted to amend this claim to plead it with greater specificity.

**D.   New Claims**

    **1.   Promissory Estoppel**

"[P]romissory estoppel rests upon a promise to do something in the future . . . and is to be applied . . . if injustice can be avoided [o]nly by enforcement of the promise." *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970). It requires "a justifiable right to rely on the part of the representee or promisee." *Id.*

Plaintiff claims she had a justifiable right to rely on Defendant's representation that he would "return the Plaintiff's and any investors [sic] funds upon request," and that he

supported this representation by giving examples of times in the past when he returned an investment upon request. (Doc. 15 at 12.) Defendant argues it was unreasonable to rely on this representation because "[a] reasonable person knows that investments involve risk, and a 'promise' that an investment will reap high returns cannot amount to more than a prediction." (Doc. 16 at 10 (quoting *Zowine v. Prussin*, No. CV-14-00892-PHX-GMS, 2016 WL 558550, at *8 (D. Ariz. Feb. 12, 2016)).) However, *Zowine* is distinguishable from the instant case. In *Zowine*, the representation at issue was an assurance that an investment would be successful. *Zowine*, 2016 WL 558550, at *8. The TAC alleges, by contrast, that Defendant represented he would return Plaintiff's investment upon request, and that he had done so in the past for others. (Doc. 15 at 12.) While a promise of future investment success is inherently speculative, a promise to refund an investment on request is fully within the control of the promisor. As alleged, Plaintiff had a justifiable right to rely on Defendant's promise to refund her investment given Defendant's representations about his past conduct in similar situations. Plaintiff's claim for promissory estoppel survives.

### 2. Alter Ego

Plaintiff's claim for alter ego must be dismissed because it fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Arizona law, an alter ego claim "is not itself a cause of action," but rather a tool by which to ascribe liability to an individual or entity for the actions of a separate corporate entity. *Specialty Cos. Grp., LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, 367, 492 P.2d 308, 310 (2021); *Airbus DS Optronics GmbH v. Nivisys LLC*, 183 F. Supp. 3d 986, 990 (D. Ariz. 2016) ("Arizona does not recognize piercing the corporate veil or alter ego as an independent cause of action."). As Plaintiff has not asserted claims against any corporate entities, her claim for alter ego does not state a claim for relief.

### 3. Quantum Meruit

Quantum meruit is "the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment." *W. Corrs. Grp., Inc. v. Tierney*, 208 Ariz. 583, 590,

96 P.3d 1070, 1077 (Ct. App. 2004). Both sides agree that Plaintiff's derivative claim for quantum meruit therefore rises and falls with Plaintiff's claim for unjust enrichment. (Doc. 16 at 12); (Doc. 17 at 15.) Because the unjust enrichment claim is not subject to dismissal at this time, the claim for quantum meruit survives too.

### 4. Theft

Theft is not a civil cause of action. *See* Ariz. Rev. Stat. § 13-1802. As Plaintiff can plead no set of facts that would establish civil liability for theft, this claim is dismissed with prejudice.

### 5. Intentional Interference with Economic Advantage

Under Arizona law, a plaintiff asserting a claim of intentional interference with economic advantage must allege "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy." *Dube v. Likins*, 216 Ariz. 406, 412, 167 P.3d 93, 99 (Ct. App. 2007). To adequately allege the first element, "there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship." *Id.* at 414, 167 P.3d at 101 (quoting *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179, 1217–18 (Haw. 2006)).

The TAC alleges several possible economic relationships for the purposes of this claim. First, it alleges that an economic relationship was created between Defendant and Plaintiff when Defendant advised Plaintiff to prepare to move from Minnesota to Arizona in the summer of 2017. (Doc. 15 at 26.) This economic relationship was then disrupted when Defendant told Plaintiff to stay in Minnesota on the day before her scheduled move. *Id.* This allegation cannot give rise to liability because it does not show that Defendant interfered with Plaintiff's relationship with a third party that had the "potential to develop into a full contractual relationship." *Dube*, 216 Ariz. at 414, 167 P.3d at 101. The relevant relationship, as alleged, was between Plaintiff and Defendant.

However, the TAC also alleges that Defendant's representations induced Plaintiff

to break her lease and leave her job. (Doc. 15 at 26.) These are relevant relationships with third parties, which the TAC plausibly alleges Defendant had knowledge of. The TAC alleges that Defendant intended to "render the Plaintiff homeless and unemployed," and that Plaintiff suffered damages as a result. The TAC's allegations about Defendant's interference with Plaintiff's lease and employment in Minnesota are sufficient to state a claim for intentional interference with economic advantage. Defendant's motion is denied as to this claim.

### 6. Intrusion Upon Seclusion

Arizona follows the Restatement (Second) of Torts for claims of intrusion upon seclusion. *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 279, 947 P.2d 846, 853 (Ct. App. 1997). According to the Restatement,

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B. The TAC alleges that "Defendant and/or accomplices intentionally hacked into the Plaintiff's personal email accounts and possibly the Plaintiff's cloud account," that the intrusion was offensive, and caused "a great deal of stress and anguish." (Doc. 15 at 27.) The basis for this claim, according to the TAC, is Plaintiff's belief, "based on assertions by the Defendant, that the Defendant and / or a co-conspirator have hacked into her personal email accounts." (Doc. 15 at 4.) Plaintiff's allegations are threadbare and fail to provide sufficient factual specificity to raise her claim for relief "above the speculative level." *Twombly*, 550 U.S. at 555. As the Supreme Court has repeatedly held, "naked assertions devoid of further factual enhancement" are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678 (cleaned up). The TAC offers no details about when this intrusion took place, how Plaintiff became aware of it, or why she believes an intrusion happened in the first place. Nor can the Court consider the additional factual allegations contained in Plaintiff's response, as the Court is limited to considering the TAC on a motion to dismiss. Plaintiff's claim for intrusion upon seclusion

is dismissed, with leave to amend should Plaintiff wish to plead additional facts to support her claim.

### 7. Civil Conspiracy

To state a claim for civil conspiracy under Arizona law, a plaintiff must allege that (1) two or more persons, (2) agreed to accomplish either (3) an unlawful purpose, or (4) a lawful object by unlawful means. *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (Ct. App. 1988). Civil conspiracy is a derivative tort that requires underlying tortious conduct for liability to attach. *Id.*; *see also Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966) (noting that civil conspiracy is not a standalone cause of action). "[N]ot all members of a conspiracy need be named defendants for one member to be found liable." *Rowland*, 157 Ariz. at 306, 757 P.2d at 110.

The TAC alleges that Defendant conspired with Ms. Rosen to defraud Plaintiff by obtaining an investment from her under false pretenses. (Doc. 15 at 29.) However, as discussed above, Plaintiff's allegations about Ms. Rosen's actions are insufficient to state a claim for fraud under Rule 9(b) of the Federal Rules. Therefore, the civil conspiracy claim, as derivative of Plaintiff's fraud claims, is likewise insufficient.

### E. Leave to Amend

When a court grants a Rule 12(b)(6) motion to dismiss, but a defective complaint can be cured, a plaintiff is ordinarily entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires."). Rule 15's policy favoring amendment "should be applied with extreme liberality," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987), especially when a plaintiff is pro se. *Lopez*, 203 F.3d at 1130–31. Leave to amend should be withheld, however, if "amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Because amendment would be futile as to Plaintiff's

claims for theft, breach of the implied covenant of good faith and fair dealing, and emergency protective order, those claims are dismissed with prejudice. As to all other dismissed claims, Plaintiff is granted leave to amend her complaint in a manner consistent with this Order.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is **GRANTED in part** and **DENIED in part** as follows:

1. Counts 18, 23, and 26 are dismissed with prejudice.
2. Counts 2, 6, 7, 8, 9, 10, 11, 14, 15, 21, 22, and 24 are dismissed with leave to amend.
3. Counts 1, 3, 5, and 20 remain as limited by this order.
4. Counts 4, 12, 13, 16, 17, 19, and 25 remain as pled.

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend her complaint in a manner consistent with this Order. Plaintiff will have **thirty days** from the date of this order to file a Fourth Amended Complaint.

Dated this 24th day of May, 2022.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge

- 17 -